MARIE METHODIST EPISCOPAL CHURCH OF CHICAGO

*v.*

TRINITY METHODIST EPISCOPAL CHURCH OF CHICAGO.

*Opinion filed December 16, 1903.*

1. RELIGIOUS SOCIETIES—*church may establish a mission without becoming trustee of the people benefited.* A church may establish a mission, purchase property and erect buildings for carrying on the mission work without becoming a trustee for the people benefited by the mission.

2. SAME—*when express trust cannot be declared.* An express trust to compel the conveyance of property to a newly organized church cannot be declared where the agreement out of which it is claimed such trust arises is not in writing.

3. SAME—*what does not establish a resulting trust.* To constitute a resulting trust in property in favor of a newly organized church it must appear that at the time of the purchase there was in existence a religious society, out of which the church was afterwards organized, which paid from its funds the purchase price or some definite part thereof, the legal title being conveyed to the other party to hold until the organization of the church.

4. SAME—*what necessary to constitute a society.* In order to constitute a religious society there must be a membership of persons associated together, with such officers as are required, or, at least, a definite collective body acting as a society.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

HOLDEN & BUZZELL, (WILLIAM H. HOLDEN, of counsel,) for appellant.

WALKER & PAYNE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The superior court of Cook county sustained the demurrer of appellee to the amended bill of appellant, which prayed the court to declare and enforce a trust in favor of appellant in real estate of which appellee held the legal title and to order a conveyance of the same to

appellant. The bill was dismissed for want of equity, and this appeal was prosecuted from the decree.

The material facts alleged in the amended bill which by the demurrer were admitted, are as follows: The Trinity Methodist Episcopal Church of Chicago and the First Methodist Episcopal Church of said city are religious corporations, which have been and are interested in the enlargement of the work of the denomination, and have solicited funds from Methodists and the public generally for the foundation of missions, which are ultimately to form churches of the denomination. In 1883 Wentworth Avenue Mission, in Chicago, was organized with the aid of members of the Trinity Methodist Episcopal Church. Harlow N. Higinbotham, who was trustee of Trinity church, assisted in starting the mission and contributed means for the advancement of its interests. Trinity church and other friends of the mission undertook to obtain aid to furnish a suitable place for public worship and for the Sunday school and mission work, and the real estate in question in this case was selected to be purchased for the mission by a committee of Trinity church, of which committee Higinbotham was a member. The members of the mission and its friends in Trinity church, and some who were not members of any church, donated money to be used in the purchase of the real estate. It was purchased and the legal title conveyed to Higinbotham by deed dated February 23, 1884, and it was paid for with the funds so contributed to the mission. In April, 1884, Higinbotham and sundry members of Trinity church, and other promoters of the mission, laid before First church the needs of the mission and Sunday school so established under the patronage of Trinity church, and First church thereupon paid $10,000 toward the contemplated building and afterward contributed other moneys in aid of the mission. At the time of the gift by First church, Higinbotham agreed that he would convey the real estate to said church within

three years, free of encumbrance, and that First church
should hold it until there should be a legally incorpo-
rated Methodist church to take and hold it, when it
should be conveyed by First church to such new church,
with the conditions usual in deeds of conveyance by First
church. A building was erected on the real estate, and
there was expended in the purchase of the real estate and
erection of the building over $40,000, which was wholly
provided by friends and members of Trinity church and
by First church and other contributors to the mission.
On March 10, 1885, Higinbotham conveyed the property
to the trustees of Trinity church. The building was
erected in part for business purposes, with a reservation
for the use of the mission and its Sunday school. The
building was dedicated October 18, 1885, as a church un-
der the name of Marie Methodist Episcopal Chapel, and
on that day the mission entered into possession. It con-
tinued in occupation as a mission under the patronage
of Trinity church. Some of the workers in the mission
were workers in the church, and Higinbotham continued
to be a trustee of Trinity church, which contributed to
the current expenses of the mission. Portions of the
property were rented by Trinity church, and until 1901
the rent was devoted by that church to the current ex-
penses of the mission. Up to that time Trinity church
contributed considerable sums of money in addition to
the income from the rent of the property. In the year
1898 Trinity church published a directory, in which it
designated Marie chapel as a Trinity M. E. mission, and
mentioned Marie chapel Sunday school among its socie-
ties and organizations. It also stated that Trinity M. E.
mission, a fine property on Wentworth avenue, erected at
a cost of $40,000, was dedicated in October, 1885. After
1900 Trinity church ceased to apply the rents to the ex-
penses of the mission or to contribute to such expenses.
On February 11, 1901, the unincorporated society became
incorporated under the name and style of "Marie Meth-

odist Episcopal Church of Chicago," and soon after it demanded a conveyance of the legal title. Trinity church replied through Higinbotham, declining to make the conveyance but offering to make a lease of the premises occupied by the mission for a nominal consideration. Since the incorporation of the mission as a church it has had a regularly appointed pastor and membership, and has occupied the property, except the portion rented by Trinity church to tenants.

The alleged verbal agreement of Higinbotham, in 1885, that he would convey the real estate to the First church within three years, and that the First church should hold it until there should be a legally organized Methodist church and should then convey it to such church, is insufficient as a basis for declaring a trust, on account of the Statute of Frauds, by which all declarations or creations of trust must be manifested and proved by some writing. All other express trusts are declared to be utterly void and of no effect. The Statute of Frauds, however, has no application to trusts resulting by operation of law, and such trusts may be proved by parol. Such a trust results from the payment of the purchase money by one party and the conveyance of the legal title to another, and it is contended that the trust alleged in this case resulted from the payment of the entire purchase money by the unincorporated society, which is now incorporated and capable of taking and holding the legal title, which was taken by Higinbotham. It is essential, however, to the creation of such a trust that there should have been a society formed for religious purposes which paid from its funds the purchase price or some definite part of it, and the trust can only arise from the original transaction. (*Reed* v. *Reed*, 135 Ill. 482; *Stephenson* v. *McClintock*, 141 id. 604; *Koster* v. *Miller*, 149 id. 195.) If there was an organized religious society which furnished the purchase price of the real estate, the fact that the society had not become a corporation would make no dif-

ference in equity, where the trust would be upheld and enforced. (*Ferraria* v. *Vasconcellos*, 31 Ill. 25; *Hoeffer* v. *Clogan*, 171 id. 462; *Alden* v. *St. Peter's Parish*, 158 id. 631.) By virtue of the statute, property held for the use of the members would upon the incorporation of the society rest in the corporation. (*Dubs* v. *Egli*, 167 Ill. 514.) The facts alleged in this case do not show that any society was formed or organized, but rather the contrary. In order to constitute a society there must be a membership of persons associated together which collectively constitute the society, with such officers as are required; or, at least, a definite collective body acting as a society. The mission is alleged to have been a mission of Trinity church, and the facts show that it was an establishment dependent on that church. A mission is ordinarily sustained by some church on the mission property, and is conducted by missionaries for religious instruction and worship for the benefit of those not having their own regular church privileges. The bill does not show that there was ever any society formed for the purpose of religious worship, but that the mission was sustained by Trinity church and other well disposed persons as a mission under the control and management of said church. The people who were aided by the mission and given religious instruction, and the children who came to the Sunday school, could not be regarded as a religious society. Trinity church could establish the mission, purchase the property, construct the buildings and carry on the work of the mission without becoming a trustee of the people who were benefited by it. Neither are there any facts charged in the bill from which it can be said that the mission furnished the funds, or any part of them, for the purchase of the property or the erection of the building. The facts stated are, that $10,000 was provided by the First church and not more than $15,000 by the members of Trinity church, and that Higinbotham contributed. So far as appears, the money did not be-

long to the mission, but was contributed for the purpose of establishing the mission for Sunday school and other religious work under the direction, management and control of Trinity church. The property was erected, in a large part, for business purposes, reserving what was necessary for the Sunday school and work of the mission. Trinity church rented the portions used for business purposes and paid the expenses of the mission with the rent and other means. A resulting trust is not created by the facts alleged in the bill.

The court was right in sustaining the demurrer and dismissing the bill.

The decree is affirmed.     *Decree affirmed.*