The People ex rel. JAMES HOUSBY, Petitioner-Appellant, v. ERNEST MORRIS, Warden, Illinois State Penitentiary at Joliet, Respondent-Appellee.

(No. 74-337;

Third District—April 30, 1975.

STOUDER, P. J., dissenting.

James Geis, Robert Agostinelli, and Verlin Meinz, all of State Appellate Defender's Office, of Ottawa, for appellant.

William J. Scott, Attorney General, of Chicago (Donald Hubert, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the Court:

This is an appeal from a denial by the Circuit Court of La Salle County of a petition for writ of habeas corpus by James Housby. Petitioner, James Housby, was incarcerated in the State Penitentiary at Joliet, Illinois, serving a term of 3 to 9 years on a conviction for burglary in the same Circuit Court of La Salle County on May 23, 1973, following a jury trial. This court recently affirmed the conviction and sentence on a direct appeal by Housby (see *People v. Housby*, 26 Ill.App.3d 92, 324 N.E.2d 465.) The facts involved in the burglary are fully stated in that opinion.

The petition for habeas corpus filed by Housby in the instant case attacked the jurisdiction of the Circuit Court of La Salle County to enter the conviction and sentence for burglary on the ground that there was no formal charge by way of indictment, information or complaint in existence against Housby.

From the record it is shown that on February 14, 1972, Housby was indicted by a La Salle County grand jury on counts of burglary and grand theft in Indictment No. 72-2-206CF. He was indicted at the same time on the same charges along with two accomplices there named, Lorraine Moreno and David Seibach, in Indictment No. 72-2-205CF. On August 2, 1972, the joint Indictment·No. 72-2-205CF was nolle prossed, apparently as to all three defendants, and presumably for the reason that Moreno and Seibach had agreed to plead guilty to the theft charge, which they did.

On August 10, 1972, a judge of the Circuit Court entered a pretrial order in Case No. 72-2-206CF. In that order, the trial court recited at length that the particular case, 72-2-206CF, was set for jury trial in October 1972. The same order also ordered petitioner Housby to file all pretrial motions by August 31, 1972. The order also set a pretrial hearing on September 5, 1972, on all pending motions and any plea discussions. The order also required that both parties comply with all discovery and pretrial orders by August 31, 1972. Then, at the end of the same order, unaccountably, there is a recital, that "at the People's motion cause No. 72-2-206CF is nolle prossed."

Following numerous motions and hearings, trial was finally had in case No. 72-2-206CF in May 1973, which resulted in conviction and sentence of petitioner Housby. He unsuccessfully appealed such case and now attacks the proceedings collaterally, as herein stated. The petition in his cause was filed on July 8, 1974, and in such petition it is

argued that the final sentence of the August 10, 1972, pretrial order nolle-prossed the case and deprived the court of jurisdiction, since no valid indictment or other formal charge remained in existence. The State filed objection to the habeas corpus petition and recited in such document that it requested that the Circuit Court correct the record to reflect the fact that on August 10, 1972, it was Indictment No. 72-2-205CF and not No. 72-2-206CF which was being nolle-prossed. The court was asked specifically to:

> "(1) correct the record to reflect that on August 10, 1972, Indictment No. 72-2-205CF, not Indictment No. 72-2-206CF was nolle-prossed; and
>
> (2) deny the petition for writ of habeas corpus."

On July 11, 1974, the judge who had presided in the earlier proceeding and entered the order now in question, entered the following *nunc pro tunc* order in that case:

> "On the Court's own motion, it is hereby ordered, adjudged and decreed: that the pre-trial order heretofore entered herein by this court is amended nunc pro tunc, as of the date of its entry, to-wit: August 10, 1972, so as to read in Paragraph 5 thereof:
>
> 5. That on motion of the State's Attorney's office of La Salle County, indictment No. 72-2-205CF is hereby nolled prossed, such error or mistake in previous order being apparent from other entries in the same record, from the pleadings and files in the said cause, and to conform to the fact."

Thereafter, on July 11, 1974, the same day, a habeas corpus hearing was held at which the *nunc pro tunc* order was noted as part of the criminal record in the case. After hearing arguments from counsel and some testimony, the court gave petitioner's counsel more time to prepare a memorandum of law. The Circuit Court of La Salle County on August 6, 1974, denied the petition for habeas corpus. In addition thereto, in response to a petition for rehearing and an argument on August 30, 1974, the court again denied the habeas corpus petition and upheld and confirmed the *nunc pro tunc* order.

■ ■ ■ Certain principles involved in a proceeding of the nature before us are clear. As stated in *People v. Moats* (3rd Dist. 1972), 8 Ill.App.3d 944, 947, 291 N.E.2d 285:

> "Before a court can acquire jurisdiction in a criminal case the accused must be charged with a crime by a formal and sufficient accusation and there can be no trial, conviction or punishment for a crime without a formal and sufficient accusation."

It is not only essential to the jurisdiction of a trial court that the accused be charged with a crime (*People v. Buffo* (1925), 318 Ill. 380, 384, 149

N.E. 271), but no waiver or consent by defendant to a criminal prosecution can confer jurisdiction or authorize his conviction in absence of an accusation charging him with a violation of the criminal law. *People v. Minto* (1925), 318 Ill. 293, 295, 149 N.E. 241; *People v. Heard* (1971), 47 Ill.2d 501, 505, 266 N.E.2d 340.

■■■ If an indictment has been unconditionally nolle prossed, an accused may not be prosecuted thereunder but is required to be re-indicted, if that is possible. (*Cf. People v. Bryant* (1951), 409 Ill. 467, 470, 100 N.E.2d 598; *People v. Watson* (1946), 394 Ill. 177, 68 N.E.2d 265, *cert. denied* 329 U.S. 769.) We also note a petition for writ of habeas corpus may be used to collaterally attack a judgment on jurisdictional grounds (*People ex rel. Kelley v. Frye* (1968), 41 Ill.2d 287, 289, 242 N.E.2d 261), but the scope of habeas corpus is limited to instances where a judgment is void or something has happened since the detention of defendant to entitle a prisoner to release. Nonjurisdictional errors are not reached by habeas corpus.

The *nunc pro tunc* order of July 11, 1974, corrects the order of August 10, 1972, to reflect that Indictment No. 72-2-205CF was nolled prossed rather than No. 72-2-206CF, as mistakenly and erroneously recited at the end of the order to which we have referred.

■■ The general rules regarding *nunc pro tunc* orders are summarized in *People v. Duden* (1954), 3 Ill.2d 16, 22, 119 N.E.2d 742, where the court says:

> "The record in a criminal case may be amended * * * when by reason of clerical misprision it does not speak the truth. Such amendment cannot be made either from the memory of witnesses, from the recollection of the presiding judge, or by affidavit. * * * There must be a memorial by which the court is able to determine that there was in fact a misprision or mistake * * *. In order to constitute a memorial * * * some note or memorandum of the records or the judge's minutes must be produced."

As stated in *People v. Michael* (1961), 23 Ill.2d 338, 340:

> "We have held that the record in a criminal case may be amended after the term at which it was made has elapsed, by an order *nunc pro tunc*, when by reason of clerical misprision it does not speak the truth, provided there is a memorial by which the court is able to determine that there was in fact a misprision or mistake * * * in the entry of the judgment."

Petitioner argues that the order in this cause is based solely on the recollections of the judge who entered the order and that there is no sufficient memorial in the trial record to support the suggestion that

the August 10 order mistakenly referred to the wrong indictment. Petitioner calls attention to the fact that indictment No. 72-2-205CF was nolle prossed 8 days earlier on August 2, 1972, and asserts that it would be "nonsensical" to include in the August 10 order, a sentence ordering that the case be nolle prossed again.

The State responds that the August 10 order itself is a sufficient memorial supporting the *nunc pro tunc* order, and that the record as a whole supports it. It is also pointed out that it is not unusual to indicate (where both an individual and a joint indictment exist as to the same crime) by separate notation in the defendant's individual case, that the joint indictment in which he was named was nolle prossed. It is apparent from the record, that the August 10, 1972, notation with reference to Indictment No. 72-2-206CF was obviously a typographical error and was itself a memorial sufficient to support the *nunc pro tunc* order. The order itself set the dates for trial and pretrial hearing in the forthcoming trial of that indictment and made various orders regarding pretrial motions and discovery. All those orders would be completely inconsistent with the recital in the final sentence, almost hidden in the order, which presumably would dismiss the same cause in which all of these orders had just been made including specific pretrial and trial settings.

The record as a whole supports the entry of the *nunc pro tunc* order that there was no nolle prosequi of No. 72-2-206CF. Support for this conclusion comes from both the prosecutor and the defense counsel who tried the case. In the case of defense counsel at the original trial, such counsel testified that he knew nothing of any such order. Such defense counsel said, as a practical matter, he would never have proceeded with the case if he had known of any nolle prosequi order. The cause was tried vigorously, and in a record of over 500 pages, all documents were captioned with the 72-2-206CF indictment number.

There was no action on the part of either party or the court which would in any way indicate that the case had been nolle prossed or that any nolle prosequi had been intended. It is apparent from the record as a whole that Indictment No. 72-2-206CF was not intended to be nolle prossed and that Indictment No. 72-2-205CF was in fact nolle prossed. A nolle prosequi was entered a week previously on August 2 on the joint indictment by reason of the guilty pleas of the accomplices. Apparently all the court sought to do in the recital in the order of August 10, 1972, was to note that the joint Indictment No. 72-2-205CF was terminated as to Housby.

Petitioner now attacks the *nunc pro tunc* order on the ground that it was obtained by the State without notice and hearing to all parties. The

record indicates that the *nunc pro tunc* order was entered on the court's own motion earlier on the same day on which the habeas corpus hearing was held. Petitioner was present with his counsel at the time of the hearing. In addition to other arguments urged in support of the *nunc pro tunc* order, the State also contends that a procedural due process issue, such as the petitioner's contention with respect to notice and hearing prior to issuance of the *nunc pro tunc* order, may not in fact be raised in a habeas corpus petition even though there is a claim of denial of constitutional rights, since it does not raise a jurisdictional question. *People ex rel. Haven v. Macieiski* (1967), 38 Ill.2d 396, 398, 231 N.E.2d 433.

■■ Petitioner persistently argued that the habeas corpus proceeding was a narrow one. The State agrees and points out that the supreme court of this State has held that habeas corpus is not available to review alleged due process errors such as involved in the challenge on the question of notice and hearing in the present case. While such allegations might involve claims of denial of constitutional rights, nonjurisdictional in nature, such issues may not be reviewed by habeas corpus. (*People ex rel. St. George v. Woods* (1970), 47 Ill.2d 261, 265 N.E.2d 164; *People ex rel. Haven v. Macieiski* (1967), 38 Ill.2d 396, 231 N.E.2d 433, 434; *People ex rel. Rose v. Randolph* (1965), 33 Ill.2d 453, 211 N.E.2d 685). Petitioner may not challenge the procedural aspects of the entry of the *nunc pro tunc* order which had been entered in the Circuit Court criminal case record before the time of the hearing, in the habeas corpus proceeding.

■■ The Circuit Court certainly had jurisdiction of the subject matter and of the person of petitioner during the course of the trial. In the habeas corpus petition, hearing the Circuit Court stated specifically that the *nunc pro tunc* order was not something entered in the habeas corpus hearing but was and is "an order entered in the criminal case record" and that, so far as the habeas corpus hearing was concerned, such entry in the criminal case record was proper. The habeas corpus court emphasized that the trial court had jurisdiction to correct typographical and similar errors in the record. Defendant does not deny this, but seeks to raise an issue with respect to notice or a hearing prior to the entry of the *nunc pro tunc* order. Habeas corpus may not, however, be used to challenge such contentions relating to procedural due process.

The procedural issue raises a constitutional question that is nonjurisdictional in character. This is emphasized by virtue of the habeas corpus petition which seeks only the release of petitioner. The notice of appeal in this cause itself clearly delineates the limits to the request for relief by the language which asks only for the "immediate and unconditional

release of defendant." There was no direct appeal from the *nunc pro tunc* order. Appeal is taken only from the August 6, 1974, order denying the release of Housby prayed for in the habeas corpus petition. The precedents in this State clearly establish that issues of such character may not be raised in a habeas corpus proceeding. It is notable that this issue was not raised on the appeal which was filed and determined in this court even though, presumably, the attorneys who had been appointed to defend Housby in that case, and who represent him in the present case, noted the typographical error. Apparently, the attorneys elected to use the habeas corpus procedure, possibly on the assumption that such procedure would prevent correction of the error.

While we do not believe this is essential to the disposition of this cause, we should note that this case is unique in the fact that the State asked, as a preliminary to the habeas corpus proceeding, that the record be corrected to reflect that Indictment No. 72-2-206CF was not nolle prossed. While the habeas corpus court sustained the *nunc pro tunc* order, it did so after reviewing the record to determine that there was a mistake or typographical error. In its objection to the habeas corpus petition, the State had requested that the habeas corpus court itself make the correction, without mentioning the *nunc pro tunc* order entered by the judge who had made the original mistake. This request was repeated when the State asked the court to consider the pretrial order itself as evidence of a typographical error.

There was a hearing at which evidence was introduced, and the court took judicial notice of the record of the cases, including the pretrial order, and likewise heard the testimony of the attorney for defendant in the original trial of petitioner. The attorney testified clearly that he knew nothing about the entry of the order and did not have a copy of the order in his file at any time and also would not have proceeded with the case had there been such an order known to him. As a matter of fact, petitioner, in the proceeding with which we are now concerned, had ample opportunity to present any matters which he desired at the hearing. The trial court took the matter under advisement and permitted defense counsel, as he requested, to submit briefs and arguments in support of the position of petitioner.

The order denying habeas corpus was entered on August 6, 1974. This was followed by a rehearing petition with which a brief was also submitted. The court again upheld the order denying the petition for writ of habeas corpus. Petitioner at no time asked for a remandment for a procedural hearing, but simply requested the release of Housby and argued that the original order which had been entered, even though it was a typographical error, required that he be released for the reason

that it could not be corrected. The trial court, however, on the basis of the record and a review of the entire file, decided that there was an adequate memorial within the order itself, as was proper under the law of this State. The *nunc pro tunc* order was confirmed by the habeas corpus court both in the first direct order and at the time of the denial of the rehearing petition.

While we do not believe this phase of our discussion of this case is essential to a disposition of the cause, in view of the limitations of the habeas corpus procedure, we should note that petitioner here had a full opportunity (he was present) to participate in the hearing which was held. His counsel cross-examined the original trial counsel at the hearing on July 11, 1974. If we view the request in the State's objection to the habeas corpus petition as having resulted in an expansion of the procedure in the court, there was certainly notice and an opportunity to be heard on the issue as noted in the record in this cause. There was no lack of due process in fact, on the assumption that the hearing was given the character of a post-conviction hearing. There is also no contention by petitioner that he could present any evidence in support of an actual intention by the court to nolle prosse in Case No. 72-2-206CF.

If that is the situation, then the trial court, in response to the State's request in the cause which is now appealed to this court, should have entered an order again ordering the amendment of the order, *nunc pro tunc*, to show that Case No. 72-2-205CF was nolle prossed, and that the error and mistake appears from the entries in the same record and from the pleadings and files in the cause and thereby is made to conform to the fact. As a matter of fact, this court itself could make such entry on the basis of its authority to enter any order which should have been made by the trial court from which the appeal is taken (Ill. Rev. Stat. 1973, ch. 110A, § 366).

We believe, however, that since this is a habeas corpus proceeding, it is not necessary that anything further be done in this proceeding. If petitioner desired a review of the notice and hearing issues, that should have been raised in an appropriate manner in the appeal or by a post-conviction petition. As we have noted, the issue was not raised on direct appeal which was had in this cause so that it is a case which is entirely different from the case of *People v. Wos* (1946), 395 Ill. 172, 69 N.E.2d 858, which is cited by petitioner. In that case, a *nunc pro tunc* order was entered without notice and hearing and neither defendant nor his counsel were present at the time of the entry of the order. It was not a habeas corpus proceeding, and the court appropriately directed a remandment for the purpose of procedural hearing to determine the propriety of the entry of the order. This could be accomplished on direct appeal,

but not in a habeas corpus proceeding such as we have here. As the State has observed, a procedural due process claim relating to notice and hearing is one which involves a constitutional error but is nonjurisdictional in origin, so that the habeas corpus court may not consider it. *People ex rel. St. George v. Woods* (1970), 47 Ill.2d 261, 265 N.E.2d 164.

It is noted also that the record discloses that counsel for petitioner recognized that there was a typographical error but strangely persisted in the contention that the error could not be corrected. It would require a strange convoluted type of reasoning to conclude that a trial court was helpless to correct a typographical error, obvious in nature, and that as a consequence of such technicality, the convicted prisoner could be released. Certainly, in this case, no basis has been established for release of petitioner Housby by reason of the typographical error. Housby, on the basis of the record, does not request a remandment but simply a release. The dissenting opinion in this cause in referring to *People ex rel. Shelley v. Frye*, 42 Ill.2d 263, 246 N.E.2d 251, confuses jurisdiction of the person as therein described. As shown by the quotation from the supreme court set forth in the dissent, the court said that "*habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of an original trial court which lacked jurisdiction of the subject matter or the person of the defendant." There was no lack of jurisdiction of Housby or of the subject matter in the original trial court. As we have observed, no direct appeal is taken from the *nunc pro tunc* order here, nor was the issue raised in the appeal or by a post-conviction petition. In the dissenting opinion, it is suggested that the cause should be remanded for "further proceedings" but the nature of the proceedings are not specified other than a statement simply that the propriety of the *nunc pro tunc* order should be considered "in a forum where the propriety of the order is an appropriate issue." Obviously, the propriety of the order would be an appropriate issue on a direct appeal and in a post-conviction proceeding, but not in a habeas corpus proceeding. Since we are involved in a habeas corpus proceeding in this cause, we see no basis for remandment.

We have recited what had transpired in the court, and referred to the nature of the hearing which was conducted, principally for the purpose of illustrating that, even if an appropriate forum for review of the entry of the *nunc pro tunc* order had been involved, the *nunc pro tunc* order in and of itself would obviously again be entered, either by the trial court or by this court on review and would simply involve circuity of action. We have noted that the trial court, in the cause before us, attempted to give petitioner ample opportunity at the hearing to present anything he desired to present in support of his contentions. Both peti-

tioner and his counsel were present and participated in the hearing. Notice of the request for the entry of a *nunc pro tunc* order by the habeas corpus court was contained in the objections filed, and a full hearing was conducted in which petitioner and his counsel participated. The trial attorney for the petitioner was called as a witness and confirmed that no nolle prosse of the indictment in question was requested or intended. Obviously, any remandment or response to a post-conviction petition would simply involve a reprise of the matters developed at the hearing in this cause.

It is clear that the Circuit Court of La Salle County was correct in denying the relief requested by the habeas corpus petition—the release of petitioner. For the reasons stated, therefore, the order of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

I do not agree with the majority of the court. In my opinion the *nunc pro tunc* order is a nullity, and consequently any judgment such as the one in the petition for writ of habeas corpus proceeding which depends upon the validity of the *nunc pro tunc* order is improper. Accordingly, I would reverse and remand the judgment in this case for further proceedings.

Since the State concedes that a valid judgment of conviction can not be based on a nonexistent charge, it seems to me that the only issue presented by his appeal is the validity, as distinguished from the propriety, of the *nunc pro tunc* order. As observed in *People ex rel. Shelley v. Frye*, 42 Ill.2d 263, 264, 246 N.E.2d 251, "This court has often said that under these limitations the remedy of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of an original trial court which lacked jurisdiction of the subject matter or the person of the defendant, or where there has been some occurrence subsequent to the prisoner's conviction which entitles the prisoner to release." As applied to the instant case, the foregoing rule means that if the trial court had jurisdiction to enter the *nunc pro tunc* order such judgment even if erroneous is a complete defense to the appellant's petition for writ of habeas corpus. Conversely, if the trial court was without jurisdiction to enter the *nunc pro tunc* order, then the judgment of conviction was likewise invalid and the trial court's action in the habeas corpus proceeding was erroneous. If the trial court was without jurisdiction to enter the *nunc pro tunc* judgment, it follows that it is imma-

terial whether its judgment would have been correct if it had jurisdiction. Thus, in either case, whether the *nunc pro tunc* order was or was not erroneous was not an appropriate issue in the collateral habeas corpus proceeding and is likewise not an appropriate issue to be considered on this appeal. The fact that the majority of the court has devoted a substantial portion of its initial discussion to whether or not the *nunc pro tunc* order was or was not erroneous (concluding it was not) tends to obscure the principal issue in the case.

The State argued in the trial court and has renewed such argument in this court that the propriety of the *nunc pro tunc* order, as distinguished from its validity, was not a proper issue in the trial court and is not a proper issue in this court. If this be the case then how much significance can be attached to the claim of error in the *nunc pro tunc* order. This brings me to the *nunc pro tunc* order itself and the procedure prior to and subsequent to its entry. The procedure prior to the entry of the *nunc pro tunc* order is in my opinion crucial, and the deficiencies in the procedure are such that whatever may have transpired thereafter could not avoid or repair the jurisdictional defects which had occurred.

It is undisputed that on the morning of July 11, 1974, the trial court entered the *nunc pro tunc* order quoted by the majority in its opinion. Although the order recites that it was entered on the court's own motion and the answer of the appellee indicates that the order was entered at its request, it is undisputed that such *nunc pro tunc* order was entered without notice to the defendant or his counsel. It should be noted that this *nunc pro tunc* order is an order entered in the criminal case and not an order entered in the collateral and independent habeas corpus proceeding. Thus, later on the morning of July 11, 1974, the response of the appellee was filed at the time the hearing on the petition for writ of habeas corpus was scheduled and at this time the *nunc pro tunc* order was a *fait accompli*. On the same morning the appellant's petition for writ of habeas corpus was denied. I am unable to understand the reference of the majority to a continuance granted the appellant for the purpose of considering the effect of the *nunc pro tunc* order, since it appears the petition was disposed of on the morning as scheduled. In any event, the matter is immaterial since there is a complete absence of any recognition by the trial court that notice of the request for the entry of a *nunc pro tunc* order was required prior to its entry.

In *People v. Wos*, 395 Ill. 172, 69 N.E.2d 858, the trial court entered a *nunc pro tunc* order which on appeal was held to be a nullity because of the invalidity of the notice. Unlike the instant case, the trial court in *Wos* attempted to give notice of the motion for *nunc pro tunc* order by serving the notice on the attorney who represented the defendant during

his trial. Since he *nunc pro tunc* order was sought and notice served some 13 months after the conviction, the court held there could be no presumption that the attorney still represented the defendant, and since the notice was invalid, the *nunc pro tunc* order likewise was a nullity. In the instant case, rather than there being merely a defective notice, there concededly was no notice whatsoever given to defendant or his attorney prior to the entry of the order. If such notice is jurisdictional, as it was held to be in the *Wos* case, it seems to me that jurisdiction can not be retroactively conferred by something which has transpired in an independent collateral proceeding. The majority opinion seems to hold that the hearing in the habeas corpus proceeding in which the propriety of the *nunc pro tunc* order was not even an appropriate issue somehow or other acted to cure an otherwise invalid *nunc pro tunc* order. The majority does so by glossing over the fact that no notice of the request for *nunc pro tunc* order was given, and so far as the majority of the court is concerned, it would appear that they believe that no such notice was required to confer jurisdiction upon the court.

The failure to give notice is not merely a deprivation of constitutional rights but is a matter of jurisdiction bringing the nullity of the *nunc pro tunc* order within the issue properly raised in a habeas corpus proceeding within the rule as previously announced in the quotation from *People ex rel. Shelley v. Frye*, 42 Ill.2d 263, 246 N.E.2d 251, quoted above. This rule was followed in the two cases cited by the majority in its opinion. But a review of such cases fails to persuade me that the issue raised on this appeal is not jurisdictional. In fact, neither of the cases cited even purport to question the jurisdiction of a trial court concerning the entry of a prior order or judgment. In *People ex rel. St. George v. Woods*, 47 Ill.2d 261, 265 N.E.2d 164, the petitioner in the habeas corpus proceeding who was in jail awaiting trial sought release for the purpose of voting, certainly a question not raised in the jurisdiction of a court. Likewise in *People ex rel. Haven v. Macieiski*, 38 Ill.2d 396, 231 N.E.2d 433, the court concluded the petition for writ of habeas corpus did not question the jurisdiction of the trial court over the subject matter or the person of the petitioner. Rather, it addressed only errors in the judgment, some of which might have been of constitutional dimension raised or considered in a post-conviction proceeding. Neither of the foregoing cases suggests either specifically or by way of analogy that the trial court had jurisdiction to enter the *nunc pro tunc* order in the instant case or that the issue presented by the failure to give notice was not a jurisdictional issue.

Since I believe the entry of the *nunc pro tunc* order was a nullity, it follows that I believe the cause should be remanded for further proceed-

ings. I believe the defendant is entitled to have the propriety of a *nunc pro tunc* order considered before such order is entered and in a forum where the propriety of the order is an appropriate issue.